JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division

DAVID ROSSKAM *(pro hac vice pending)*
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20004-7611
Telephone: (202) 514-3974
david.rosskam@usdoj.gov

MARK A. KLAASSEN
United States Attorney

NICHOLAS VASSALLO
Assistant United States Attorney
District of Wyoming
P.O. Box 668
Cheyenne, Wyoming 82003
Telephone: (307) 772-2124
nick.vassallo@usdoj.gov

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2020 JUL -9  AM 9: 25

MARGARET BOTKINS, CLERK
CHEYENNE

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>J.R. SIMPLOT COMPANY and<br>SIMPLOT PHOSPHATES, LLC<br><br>            Defendants. | No. 20-CV-125-F<br><br>COMPLAINT |

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF THIS ACTION

1.        This is a civil action brought pursuant to Section 3008(a) and (g) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6928(a), (g), and Section 325(b)(3) and (c)(4) of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11045(b)(3), (c)(4), against J.R. Simplot Company ("Simplot") and its subsidiary, Simplot Phosphates, LLC ("Simplot Phosphates") (collectively, "Defendants"). The United States seeks injunctive relief and the assessment of civil penalties for environmental violations at the fertilizer and agricultural products manufacturing facility owned and operated by Defendants near Rock Springs, Wyoming ("Facility").

2.        As set forth below, Defendants have violated and continue to violate statutory and regulatory requirements applicable to the management and treatment, storage, or disposal of solid and/or hazardous waste, found at Sections 3004 and 3005 of RCRA, 42 U.S.C. §§ 6924, 6925, and the regulations promulgated thereunder, including 40 C.F.R. Parts 261, 262, 264/265, 268, and 270, which are adopted and incorporated by reference in the Wyoming Hazardous Waste Management Rules, Chapter 20-3 of Wyoming Administrative Code; and has also violated the requirements found at Section 313 of EPCRA, 42 U.S.C. § 11023, and the regulations promulgated thereunder set forth at 40 C.F.R. Part 372, that apply to the reporting of toxic chemicals.

## JURISDICTION AND VENUE

3.        This court has jurisdiction over the subject matter of this action pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a); Section 325 of EPCRA, 42 U.S.C. § 11045; and 28 U.S.C. §§ 1331 (federal question jurisdiction), 1332 (diversity), 1345 (jurisdiction when the United States is a plaintiff), and 1355 (jurisdiction over penalties arising under federal claims).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and

1395(a), Section 3008(a)(1) of RCRA, 42 U.S.C. § 6928(a)(1), and Section 325(b)(3) and (c)(4)

of EPCRA, 42 U.S.C. § 11045(b)(3), (c)(4), because Defendants are located and doing business

in this District and the violations occurred in this District.

## NOTICE TO STATE

5.      The State of Wyoming has been notified of this action in accordance with

Section 3008(a)(2) of RCRA, 42 U.S.C. § 6928(a)(2).

## DEFENDANTS AND DEFENDANTS' FACILITY

6.      Simplot is a privately-held food and agribusiness company, incorporated in

Nevada, with its principal corporate offices in Boise, Idaho.  Simplot has U.S. operations in

ranching, food processing, mining, and fertilizer production and retail in several states.  Among

its production plants is the Facility, Simplot's fertilizer and agricultural products manufacturing

plant located in Rock Springs, which Simplot operates as part of its subsidiary, Simplot

Phosphates.  At the Facility, Defendants principally manufacture phosphoric acid and phosphate

fertilizer products.  Simplot was an owner and operator of the Facility beginning in 1992, in a

joint venture with Farmland Industries, Inc.  Defendants have been the sole owner and operator

since 2003, when Simplot purchased its joint venture partner's interest in the operation and

renamed it Simplot Phosphates, LLC.

## STATUTORY AND REGULATORY BACKGROUND

### *Resource Conservation And Recovery Act (RCRA)*

7.      Congress enacted RCRA in 1976 to amend the Solid Waste Disposal Act, and

enacted the Hazardous and Solid Waste Amendments in 1984 to further amend the Solid Waste

Disposal Act.  RCRA establishes requirements to be administered by EPA and authorized states

for addressing the generation, transportation, treatment, storage, or disposal of hazardous waste. See 42 U.S.C. §§ 6901 - 6992k.

8.      RCRA's subchapter III (RCRA §§ 3001-3023, 42 U.S.C. §§ 6921-6940, known as "Subtitle C"), required EPA to promulgate regulations establishing performance standards applicable to facilities that generate, transport, treat, store, or dispose of hazardous wastes. Together, RCRA Subtitle C and its implementing regulations, set forth at 40 C.F.R. Parts 260 – 279, comprise EPA's RCRA regulatory hazardous waste program.

9.      Section 3006 of RCRA, 42 U.S.C. § 6926, allows the Administrator to authorize a state to administer its own hazardous waste program in lieu of the federal program when the Administrator deems the state program to be equivalent to the federal program.

10.     Pursuant to Section 3006(b) of RCRA, 42 U.S.C. § 6926(b), EPA granted the State of Wyoming final authorization to administer its hazardous waste program in lieu of the federal program on October 4, 1995, effective October 18, 1995 (60 Fed. Reg. 51925). There have been subsequent authorized revisions to the base program. Section 503(d) of the *Wyoming Environmental Quality Act*, Wyoming Statute (W.S.) § 35-11-503(d), provides the statutory authority for the regulatory program "Wyoming Hazardous Waste Rules and Regulations," which includes the regulations that are part of the state program authorized by EPA. Wyoming has incorporated the federal regulations by reference, as set forth generally in Chapter 1, Section 2, and specifically in subsection (a) of Sections 260 through 268, 270, 273, and 279 (corresponding, respectively, with 40 C.F.R. Parts 260 through 268, 270, 273, and 279) of the Wyoming Hazardous Waste Management Rules, Chapter 20-3 of Wyoming Administrative Code (hereinafter "the authorized Wyoming hazardous waste program" or "the authorized Wyoming

hazardous waste regulations"). The Wyoming Department of Environmental Quality is the State agency designated to implement the authorized hazardous waste program in Wyoming.

11. Although EPA has granted the State authority to administer its hazardous waste program in lieu of the federal program, EPA retains jurisdiction and authority to initiate an independent enforcement action, pursuant to Section 3008(a)(2) of RCRA, 42 U.S.C. § 6928(a)(2). Because the provisions of the authorized Wyoming hazardous waste program operate in lieu of the federal RCRA regulations, and because Wyoming has incorporated by reference the relevant RCRA regulations into the Wyoming program, the citations herein will be to the authorized Wyoming program with the relevant incorporated federal citation also set forth.

12. Section 261(a) of the authorized Wyoming hazardous waste program incorporates 40 C.F.R. § 261.2, which defines a solid waste as any discarded material that is not otherwise excluded under 40 C.F.R. 261.4(a), or that is not excluded by variance. A discarded material is any material which is abandoned, recycled, inherently waste-like, or a military munition. Materials are solid waste under 40 C.F.R. § 261.2 if they are abandoned by being disposed of, burned or incinerated, or accumulated, stored, or treated (but not recycled) before, or in lieu of, being abandoned by being disposed of, burned, or incinerated.

13. A solid waste is a hazardous waste if it is not excluded from regulation as a hazardous waste under Section 261(a) of the authorized Wyoming hazardous waste program, incorporating 40 C.F.R. § 261.4(b), and it exhibits any of the characteristics of hazardous waste identified in 40 C.F.R. Part 261, Subpart C, or it is listed in 40 C.F.R. Part 261, Subpart D.

14. Under Section 262(a) of the authorized Wyoming hazardous waste program, incorporating 40 C.F.R. Part 262, subpart C, characteristic hazardous wastes are assigned "D" codes depending on the specific hazardous characteristic that the waste exhibits: a hazardous

waste with a pH of less than 2.0, or greater than 12.5, exhibits the characteristic of corrosivity and is assigned the D002 hazardous waste code as set forth in 40 C.F.R. § 261.2; a solid waste is assigned the D006 cadmium hazardous waste code as set forth in 40 C.F.R. § 261.24 (using the Toxicity Characteristic Leaching Procedure), when the extract from a representative sample of the waste contains greater than or equal to 1.0 milligrams per liter of cadmium; and, a solid waste is assigned the D007 chromium hazardous waste code as set forth in 40 C.F.R. § 261.24 (using the Toxicity Characteristic Leaching Procedure), when the extract from a representative sample of the waste contains greater than or equal to 5.0 milligrams per liter of chromium.

15.     Under Section 261(a) of the authorized Wyoming hazardous waste program, incorporating 40 C.F.R. § 261.4(b)(7), certain solid wastes from the extraction, beneficiation, and processing of ores and minerals are excluded from the definition of hazardous wastes ("the Bevill exclusion"). For a mineral processing waste to be excluded from hazardous waste regulation under the Bevill exclusion (i.e., a "Bevill waste" or "Bevill-excluded waste"), it must fall into one of the twenty specific categories of excluded wastes listed at 40 C.F.R. § 261.4(b)(7)(ii).

16.     Only two wastes generated from phosphoric acid mineral processing operations are Bevill-excluded wastes specifically excluded from hazardous waste regulation under the Bevill exclusion: "[p]hosphogypsum from phosphoric acid production" and "process wastewater from phosphoric acid production," pursuant to Section 261(a) of the authorized Wyoming hazardous waste program, incorporating 40 C.F.R. § 261.4(b)(ii), (D), (P).

17.     Chemical processing wastes, cleaning wastes, and other wastes generated in production involving additional processing and refining, occurring after mineral processing

creates the first saleable product, are not "process wastewater from phosphoric acid production" and are not within the Bevill exclusion ("non-Bevill wastes").

18.      If phosphogypsum and process wastewater from phosphoric acid production that are Bevill-excluded wastes are mixed with hazardous wastes that are non-Bevill wastes, and if the resulting mixture continues to exhibit a hazardous characteristic of the non-Bevill waste, then the entire mixture is a hazardous waste pursuant to the Bevill Mixture Rule under Section 261(a) of the authorized Wyoming hazardous waste program, incorporating 40 C.F.R. § 261.3(a)(2)(i).

19.      Sections 264(a) and 265(a) of the authorized Wyoming hazardous waste program, incorporating 40 C.F.R. Parts 264/265, apply to owners and operators of facilities that treat, store or dispose of hazardous waste.

20.      Subsection (a) of Sections 262, 264/265, 268, and 270 of the authorized Wyoming hazardous waste program, incorporating EPA regulations (as relevant to this lawsuit), requires that owners and operators of facilities that generate hazardous waste must, among other things:

     a.      determine whether generated solid wastes are hazardous, as set forth in 40 C.F.R. § 262.11;

     b.      treat, store, and dispose of hazardous waste in compliance with a permit or (if they qualify for interim status) with interim status requirements pursuant to Section 3005(a) of RCRA, 42 U.S.C. § 6925(a), and 40 C.F.R. Part 264 (or Part 265 for interim status), and Part 270;

     c.      meet certain requirements for waste treatment prior to placement or disposal of hazardous waste on the land, as set forth in 40 C.F.R. Part 268; and

      d.      meet certain requirements that include having a plan for facility closure and post-closure care, estimating the costs thereof, and establishing financial assurance for closure, post-closure care, and third-party liability, as set forth in 40 C.F.R. Part 264 (or Part 265).

21.      Pursuant to Sections 3008(a) and (g) and 3006(g) of RCRA, 42 U.S.C. §§ 6928(a) and (g) and 6926(g), as amended by the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, the United States may enforce the federally-approved authorized Wyoming hazardous waste program, as well as the federal regulations that remain effective in Wyoming, by filing a civil action in United States District Court seeking civil penalties not to exceed $25,000 per day per violation, and injunctive relief.

22.      Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and as provided in 40 C.F.R. Part 19, the amounts specified in the foregoing paragraph increase to a civil penalty of up to $32,500 per day for each violation of RCRA, 42 U.S.C. § 6921, that occurred after March 15, 2004, through January 12, 2009, up to $37,500 per day for each violation that occurred after January 12, 2009 and through November 2, 2015, and up to $75,867 per day for each violation that occurred after November 2, 2015.  Each day of such violation constitutes a separate violation pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g).

### *Emergency Planning And Community Right-To-Know Act (EPCRA)*

23.      Congress enacted EPCRA in 1986, imposing requirements for federal, state and local governments, tribes, and industry.  These requirements covered emergency planning and "Community Right-to-Know" reporting on hazardous and toxic chemicals.  See 42 U.S.C.

§ 11001 - 11050.  Pursuant to Section 313 of EPCRA, 42 U.S.C. § 11023, EPA promulgated the

Toxic Chemical Release Reporting: Community Right-to-Know Rule, 40 C.F.R. Part 372.

24.      Section 313(b) of EPCRA and 40 C.F.R. § 372.22 address owners and operators

of facilities that have 10 or more full-time employees; are in a specific Standard Industrial

Classification (SIC), for which the corresponding North American Industry Classification

System (NAICS) codes are included under 40 C.F.R. §§ 372.23(b) and (c); and manufacture,

process, or otherwise use a toxic chemical listed under Section 313(c) of EPCRA and 40 C.F.R.

§ 372.65, in quantities exceeding the threshold set forth in 40 C.F.R. § 372.25.  The reporting

threshold under 40 C.F.R. § 372.25 for years beginning with 1989 is 25,000 lbs. per year.

25.      Under Section 313(b) of EPCRA, owners and operators are required to annually

submit a Toxic Chemical Release Inventory Reporting Form, EPA Form 9350-1 (Form R)

("Form R" or "toxic release report"), for each toxic chemical listed under section 313(c) of

EPCRA and 40 C.F.R. § 372.65, that was manufactured, processed, or otherwise used during the

preceding calendar year in quantities exceeding the established toxic chemical thresholds.

26.      Section 313(b)(1)(C)(i) of EPCRA, 42 U.S.C. § 11023(b)(1)(C)(i), defines

"manufacture" to mean "to produce, prepare, import, or compound a toxic chemical."  Any toxic

chemical produced coincidentally during the manufacture, processing use, or disposal of another

chemical or mixture of chemicals, including a toxic chemical that is separated from that other

chemical or mixture of chemicals as a byproduct, and a toxic chemical that remains in that other

chemical or mix of chemicals as an impurity is "manufactured."  40 C.F.R. § 372.3.

27.      Section 325(b)(3) and (c)(4) of EPCRA, 42 U.S.C. § 11045(b)(3), (c)(4),

authorizes the Administrator of EPA to commence a civil action to assess and recover a civil

penalty of up to $25,000 per day for each violation, whenever any person has violated or is in violation of any requirement of EPCRA Section 313.

28.     Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and as provided in 40 C.F.R. part 19, the amounts specified in the foregoing paragraph increase to a civil penalty of up to $27,500 per day for each violation occurring on and after January 31, 1997, up to $32,500 per day for each violation occurring on or after March 15, 2004, to $37,500 per day for each violation occurring on or after January 12, 2009, and up to $58,328 per day for each violation occurring after November 2, 2015.

## GENERAL ALLEGATIONS

### *Facility and Process Description*

29.     The Facility is located approximately 5 miles south of Rock Springs, Wyoming and has been operated at this site since about 1986, initially by Chevron Resources Company and, since 1992, by Simplot with its joint venture partner (until 2003), and by Simplot through its subsidiary Simplot Phosphates (from 2003 to the present).

30.     On October 23-24, 2007, EPA conducted an on-site inspection of the Facility ("the October 2007 inspection"). The inspection included a comprehensive review of the Facility's processes and operations, discussions with Facility personnel, sampling of waste streams, and analysis of the samples. Based on the October 2007 inspection, EPA issued a Notice of Violation on June 18, 2009 to inform Defendants of EPA's findings and specifically identify what EPA believed were ongoing violations at the Facility. EPA performed subsequent re-inspections of the Facility, including in 2014 and 2017.

31.     The Facility manufactures phosphoric acid, an ingredient in both the liquid and dry products produced there; superphosphoric acid ("SPA"), a concentrated form of phosphoric acid; and, dry granulated fertilizers such as monoammonium phosphate ("MAP"). The Facility also manufactures the chemical product fluorosilicic acid ("FSA").

32.     Phosphoric acid is produced by the reaction of phosphate rock with sulfuric acid in two isothermal reactors (mineral processing). The sulfuric acid is produced on-site at plants separate from the phosphoric acid plant. Phosphate ore mined at Simplot Phosphates' Vernal, Utah mine is beneficiated (separated from sand and clay) and sent to the Rock Springs, Facility via a 96-mile slurry pipeline where it is reacted with sulfuric acid. The calcium phosphate in the phosphate rock is converted by reaction with concentrated sulfuric acid, yielding phosphoric acid as well as solid calcium sulfate, known as "phosphogypsum" (or "gypsum"). Phosphogypsum is filtered from the phosphoric acid, slurried with process wastewater in three slurry tanks ("gypsum tanks"), and the resultant slurry is pumped to a lined phosphogypsum stack system ("gypsum stack") for disposal there. Because the production of phosphoric acid is a water-intensive process and water is used throughout the process (e.g., as acid dilution, evaporators, condensers, and as a pipe and tank cleaning agent), approximately 120 million to 170 million gallons of process wastewater are constantly stored in and circulating throughout the gypsum stack system and the phosphoric acid production process. The gypsum stack and process wastewater return pond ("gypsum pond") are lined with a synthetic 16 oz. non-woven polypropylene geotextile and a 60 to 80 mil high density polyethylene liner over that. The Facility is not authorized to discharge any process water to the environment under environmental permits.

11

33.     After the phosphate rock is received at the Facility via the slurry pipeline from the Vernal mine, the slurry is stored in one of four storage tanks. The phosphate rock slurry is then directed to a reactor tank at the front end of the phosphoric acid plant where the slurry is mixed with concentrated sulfuric acid and portions of recycled phosphoric acid. The result is a dilute liquid phosphoric acid (28%) and gypsum solids. The slurry of dilute phosphoric acid and gypsum is pumped to the filter tables where the liquid acid is drawn off the bottom and gypsum is scraped off the top. The gypsum filter cake (also called gypsum), which is rinsed with process water to recover residual phosphate values, is slurried with process water and then pumped to the gypsum stack where a portion of the mixture remains. Some of the fluorine present in the phosphate rock is also released as hydrogen fluoride gas. The phosphoric acid is then further concentrated by driving off the excess water by use of the steam heated evaporators in the phosphoric acid plant resulting in an acid concentration of approximately 54%. At this level of concentration, it is known as "merchant grade acid" ("MGA"). Some of the MGA is used as feedstock for other products produced at the Facility, such as SPA and MAP, while some is sold directly as product.

34.     SPA, a phosphoric acid product more concentrated than MGA, is manufactured at the Facility through additional processing and refining. SPA is made by further evaporating water, until a 68% phosphoric acid product is produced. The acid is evaporated in the phosphoric acid plant building and sent to the SPA plant building for further refining that entails cooling, mechanical agitation, filtering of precipitated impurities, and final polishing. SPA is sold to customers, who mostly use it to produce ammonium polyphosphates principally for agricultural, and some industrial, applications.

35.     SPA manufacturing generates wastes and other materials.  Condensates and evaporation wastes from SPA production are routed to the gypsum stack for disposal.  Filter solids from SPA production have a high phosphate content and are a feedstock used in producing granulated fertilizer at the Facility.

36.     MAP, a dry (granulated) fertilizer product, is manufactured at the Facility by means of additional chemical processing and refining.  MAP is made by reacting phosphoric acid with ammonia, which produces the crystalline precipitate MAP.  Filter solids from the phosphoric acid and SPA plants are sent to the ammonium phosphate plant where it is mixed with ammonia in a reactor vessel.  The resultant phosphate slurry is then fed to a granulator to create pellets which are subsequently dried.  This solid material then passes through a system of sizing screens and mills to achieve the desired granule size.

37.     Wastes from the production of MAP at the Facility include residues from the production process.  These wastes (residues), designated D007 (chromium), after neutralization, were periodically sent to the gypsum stack.   In recent years, no wastes from granulation have been sent to the gypsum stack.

38.     FSA is manufactured at the Facility by means of additional chemical processing and refining.  FSA is produced from the vapors recovered from evaporation units used in producing phosphoric acid.  The recovered vapors produce a condensate containing fluorides. The FSA production systems produce a product with an acid strength of 23- 25% $H_2SiF_6$ that is typically used by municipalities as a water fluoridation chemical.  Once the concentration of the process condensate reaches the desired strength, the process condensate is sent to clarifiers to remove solids.   The clarified FSA is pumped through a final cartridge filter element to remove any remaining solids to produce a clear product FSA.

13

39.     Wastes from the production of FSA at the Facility include "heels" (solids accumulated in FSA clarifiers), designated D002 (corrosivity) and D004 (arsenic); wastewater from the cleaning of filter elements, designated D002 (corrosive) and D008 (chromium); and, spent filter cartridges. The heels and wastewater are disposed of in the gypsum stack. The spent filter cartridges are disposed of at a local landfill. The current practice is to send any filter cartridge that exhibits a hazardous characteristic offsite to a RCRA-permitted facility.

40.     A laboratory at the Facility conducts chemical testing of products for quality control. Wastes designated D007 (chromium) were placed in the laboratory sump and disposed of in the gypsum stack. Simplot's practice in recent years has been to collect all hazardous waste from the laboratory for offsite disposal at a RCRA-permitted facility.

41.     Phosphate ore mined in Utah contains mostly phosphate but it also contains a variety of metals and mineral compounds including aluminum, arsenic, chromium, copper, lead, magnesium, manganese, mercury, nickel, and zinc. The other metals/minerals of concern found in phosphate ore are not normally present in their "native" or elemental state (i.e., existing in nature uncombined with other elements), but are present as a native element and/or metal/mineral compounds (e.g., metal silicates, metal carbonates, metal oxides or metal sulfides). During the manufacturing processes at the Facility, metal compounds are "liberated" from phosphate ore and chemically converted as a result of being dissolved in the phosphoric and sulfuric acids, and fluorine is "liberated" as hydrogen fluoride. These converted compounds are considered to be byproducts or impurities associated with the manufacturing process, depending upon whether the compounds are separated from the product or remain in the product. As a result of the process of digesting ore in reactor vessels, some metals remain predominantly in solution, some are almost entirely precipitated by reaction with sulfate ions, and some partition

between product acid, the phosphogypsum waste, and the process wastewaters. Some of the metal compounds end up in the fertilizer products.

42.     The Facility uses water in various production processes, including, but not limited to, condensers, flash coolers, air pollution control devices (scrubbers), and equipment cleaning and maintenance. This results in the accumulation of contaminants (including fluorides) in the water, resulting in aqueous wastes. Prior to reuse in the various processes, the aqueous wastes must be processed to remove such contamination. The processing occurs in the gypsum stack, where excess fluorides and other contaminants are precipitated from the water. Approximately 11,000 gallons per minute (gpm) of aqueous wastes are sent from production processes at the Facility to the gypsum stack system for disposal.

43.     Cleaning operations occur at various tanks and units at the Facility on a regular basis, typically involving the circulation of fresh water or water from the gypsum stack system into various tanks and other units to remove contamination. On occasion, sulfuric acid is added to the cleaning solution to assist in the cleaning process. Upon being removed from the tank or other unit, the spent cleaning solution, designated D002 (corrosive) and D008 (chromium), is placed in the gypsum stack.

44.     In Simplot's phosphoric acid and fertilizer production areas, spills and leaks of phosphoric acid and sulfuric acid occasionally occur. Based on EPA's knowledge of the Facility's processes, these spills and leaks can commingle with process wastewater being transported from the production areas to the gypsum stack system.

45.     The wastes detailed above that are routed to the gypsum stack system are combined into a slurry. In the stack, the slurry separate into solid and liquid fractions. The liquid portion is decanted off the top and combined with leachate draining from the gypsum

stack and returned to the plant at the rate of approximately 11,000 gpm for reuse. The solid

portion (phosphogypsum) settles to the bottom and continually increases the size of the gypsum

stack, which has grown to approximately 420 acres in size and up to about 200 feet tall. Simplot

does not remove or reuse the solid fraction that remains in the gypsum stack.

### *General RCRA Allegations*

46.     Each of Defendants is a "person" within the meaning of Section 1004(15) of

RCRA, 42 U.S.C. § 6903(15), which includes corporations.

47.     Each of Defendants is and has been at all times relevant to this action an owner

and/or operator of the Facility within the meaning of Section 260(a) of the authorized Wyoming

hazardous waste program, incorporating 40 C.F.R. § 260.10.

48.     The gypsum and the wastewaters generated at the Facility from phosphoric acid

production processes are, respectively, "[p]hosphogypsum from phosphoric acid production" and

"process wastewater from phosphoric acid production" under Section 261(a) of the authorized

Wyoming hazardous waste program, incorporating 40 C.F.R. § 261.4(b)(7)(ii)(D) and (P), and

therefore are Bevill-excluded wastes, i.e., they are not hazardous wastes under the Bevill

exclusion.

49.     Other wastes generated at the Facility, including wastes generated from

chemical or other processing that occurs after the first saleable product, scrubber wastes, spills

and leaks, and cleaning wastes are not "process wastewater from phosphoric acid production" are

non-Bevill wastes that do not qualify for the Bevill exclusion. When these non-Bevill wastes

exhibit a hazardous characteristic and are discarded, they are "solid wastes" and "hazardous

wastes" within the relevant provisions of the authorized Wyoming hazardous waste program and

RCRA.

16

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*(RCRA - Failure to Determine if a Solid Waste is a Hazardous Waste)*

50.    The allegations in paragraphs 1 through 22 and paragraphs 29 through 49 are re-alleged and incorporated herein by reference.

51.    Section 262(a) of the authorized Wyoming hazardous waste program, incorporating 40 C.F.R. § 262.11, requires, among other things, that a person who generates a solid waste must determine if that waste is a hazardous waste.

52.    Since at least the time of the October 2007 inspection, and thereafter to the present, Defendants routinely generated the following solid wastes at the Facility:

      a.   SPA air pollution control scrubber blowdown (effluent), a D002 (corrosive) hazardous waste, managed in the gypsum pond;

      b.   A Evaporator cleaning solution waste (spent pipe cleaning solution), a D002 (corrosive) and D007 (chromium) hazardous waste, managed in the gypsum stack;

      c.   Tank farm sump contents, a D002 (corrosive) hazardous waste;

      d.   Laboratory sump contents, a D007 (chromium) hazardous waste;

      e.   Fluorosilicic acid (FSA) "heels" (solids accumulated in FSA clarifiers), a D002 (corrosivity) and D004 (arsenic) hazardous waste;

      f.   Gypsum pond decant water, a D002 (corrosivity) and D004 (chromium) hazardous waste, managed in the gypsum stack;

      g.   Granulation waste, managed in the gypsum stack as of October 2007 and for some years thereafter before that practice was discontinued; and

     h.   Granulation sump liquids, a D002 (corrosive) and D007 (chromium) hazardous waste.

53.      The solid wastes enumerated in paragraph 52 above were hazardous for the characteristics listed there for each.

54.      Since at least the time of the October 2007 inspection and thereafter as to some or all of the above wastes, Defendants did not determine if any of the solid wastes enumerated in paragraph 52 were hazardous wastes, in violation of Section 262(a) of the authorized Wyoming hazardous regulations, incorporating 40 C.F.R. § 262.11.

55.      Defendants are liable for injunctive relief and civil penalties pursuant to section 3008(a) and (g) of RCRA, 42 U.S.C. § 6928(a), (g), for each day they failed to make a hazardous waste determination for solid wastes generated at the Facility.

**SECOND CLAIM FOR RELIEF**
*(RCRA - Treatment, Storage, or Disposal of Hazardous Waste in the Gypsum Stack*
*Without a Permit or Interim Status)*

56.      The allegations in paragraphs 1 through 22 and paragraphs 29 through 49 are re-alleged and incorporated herein by reference.

57.      Sections 264(a) and 270(a) of the authorized Wyoming hazardous waste program, incorporating the requirements of RCRA section 3005(a), 42 USC § 6925(a) and 40 C.F.R. Parts 264/265 and 270, require, among other things, that the owner and operator of a hazardous waste management unit must have a permit (or interim status) for the treatment, storage, or disposal of any hazardous waste during the active life of the unit.

58.      Since at least the time of the October 2007 inspection, and continuing thereafter to the present, Defendants routinely circulated hazardous process wastewater in the Facility's gypsum stack prior to treatment, storage, or disposal. The hazardous process wastewater is a

mixture which has at times included all, and currently includes some, of the following hazardous wastes:

a.  SPA air pollution control scrubber blowdown (effluent), a D002 (corrosive) hazardous waste, managed in the gypsum pond;

b.  A Evaporator pipe-cleaning solution waste, a D002 (corrosive) and D007 (chromium) hazardous waste, managed in the gypsum stack;

c.  Tank farm sump contents, a D002 (corrosive) hazardous waste;

d.  Laboratory sump contents, a D007 (chromium) hazardous waste;

e.  FSA "heels" (solids accumulated in FSA clarifiers), a D002 (corrosivity) and D004 (arsenic) hazardous waste; and

f.  Gypsum pond decant water, a D002 (corrosivity) and D004 (chromium) hazardous waste, managed in the gypsum stack.

59.  Defendants did not have a RCRA hazardous waste permit (or interim status) for treatment, storage, or disposal in the Facility's gypsum stack, and therefore have been in continuous violation of section 3005 of RCRA, 42 U.S.C. § 6925, and the applicable regulatory requirements found in Sections 264(a)/265(a) and 270(a) of the authorized Wyoming hazardous waste regulations, respectively incorporating 40 C.F.R. Parts 264/265 and 270.  As of the October 2007 inspection and continuing thereafter, in some cases to the present, Defendants did not comply with applicable RCRA hazardous waste permit requirements, including the requirements for the owner and operator of a facility:

a.  to develop and follow a written waste analysis plan describing the procedures that will be carried out to comply with the requirements set

forth at 40 C.F.R. § 264.13(a), and to keep this plan at the facility (40 C.F.R. § 264.13(b));

b.   to have a contingency plan for the facility designed to minimize hazards to human health or the environment from fires, explosions, or any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents to air, soil, or surface water (40 C.F.R. § 264.51(a));

c.   to have a written closure plan and post-closure plan for the facility, and contingent closure and post-closure plans for certain surface impoundments from which the owner or operator intends to remove or decontaminate the hazardous waste at partial or final closure, and to submit the required closure and post-closure plans for approval as part of a permit application (40 C.F.R. §§ 264.112(a), 264.118(a));

d.   to have a detailed written estimate, in current dollars, of the cost of closing the facility and for post-closure monitoring and maintenance of the facility, in accordance with applicable closure and post-closure regulations (40 C.F.R. §§ 264.142(a), 264.144);.

e.   to establish financial assurance for closure and post-closure care of the facility in accordance with the approved closure and post-closure plans for the facility, and choose from the specified financial assurance options (40 C.F.R. § 264.143(a) - (f) (40 C.F.R. §§ 264.143, 264.145); and

f.   to demonstrate financial responsibility for bodily injury and property damage to third parties caused by non-sudden accidental occurrences arising from operations of the facility by maintaining liability coverage for

non-sudden accidental occurrences in the amount of at least $3 million per

occurrence with an annual aggregate of at least $6 million, exclusive of

legal defense costs (40 C.F.R. § 264.147(b)).

60.      Defendants are liable for injunctive relief and civil penalties pursuant to section

3008(a) and (g) of RCRA, 42 U.S.C. § 6928(a), (g), for their continuing disposal of hazardous

waste in the phosphogypsum stack system without a permit (or interim status) and their

continuing failure to comply with some or all of the requirements associated therewith.

### THIRD CLAIM FOR RELIEF
*(RCRA - Failure to Meet Land Disposal Restrictions for Prohibited Hazardous Wastes)*

61.      The allegations in paragraphs 1 through 22 and paragraphs 29 through 49 are re-

alleged and incorporated herein by reference.

62.      Section 268(a) of the authorized Wyoming hazardous waste program,

incorporating 40 C.F.R. Part 268, Subpart A, requires, among other things, that a prohibited

waste which exhibits a characteristic under 40 C.F.R. Part 261, subpart C may not be land

disposed unless the waste complies with the treatment standards under subpart D of 40 C.F.R.

Part 268 (40 C.F.R. § 268.9(c)); that a generator of hazardous waste must determine if the waste

needs to be treated before it can be land disposed  (40 C.F.R. § 268.7(a)); and that the initial

generator of a solid waste must determine each EPA Hazardous Waste Number (waste code)

applicable to the waste in order to determine the applicable treatment standards under subpart D

of 40 C.F.R. Part 268, Land Disposal Restrictions (LDRs) (40 C.F.R. § 268.9(a)).

63.      Section 268(a) of the authorized Wyoming hazardous waste program,

incorporating 40 C.F.R. § 268.40(a), requires, among other things, that a prohibited waste

identified in the table "Treatment Standards for Hazardous Wastes" may be land disposed only if

it meets the requirements found in the table.  For D002 corrosive wastewaters, the waste must

meet the DEACT code and also meet 40 C.F.R. § 268.48. For D007 chromium wastewaters, the waste must have no more than 2.77 mg/l and must meet 40 C.F.R. § 268.48 standards.

64.      Section 268(a) of the authorized Wyoming hazardous waste program, incorporating 40 C.F.R. § 268.48 (the "Universal Treatment Standards" regulations), requires, among other things, that prohibited wastewaters must contain no more than 0.69 mg/l of cadmium and no more than 2.77 mg/l of chromium.

65.      Since at least the time of the October 2007 inspection, and continuing thereafter to the present, Defendants routinely disposed of hazardous waste, which is prohibited from land disposal pursuant to Section 268(a) of the authorized Wyoming hazardous waste program, incorporating 40 C.F.R. §§ 268.9(c), 268.40(a), and 268.48 ("prohibited waste"), in the Facility's gypsum stack. Nor did Defendants comply with other LDR requirements of 40 C.F.R. Part 268, incorporated by Section 268(a) of the authorized Wyoming hazardous waste program, including requirements to determine if the waste needed to be treated before being land disposed, and to determine the applicable waste code(s) necessary to determining the applicable treatment standards for such waste.

66.      At the time of the October 2007 inspection, the following hazardous wastes were eventually being disposed of in the gypsum stack, a practice that continued thereafter to the present for some or all of these wastes:

      a.   SPA air pollution control scrubber blowdown (effluent), a D002 (corrosive) hazardous waste, initially managed in the gypsum pond;

      b.   A Evaporator cleaning solution waste, a D002 (corrosive) and D007 (chromium) hazardous waste, managed in the gypsum stack;

      c.   Tank farm sump contents, a D002 (corrosive) hazardous waste;

    d.   Laboratory sump contents, a D007 (chromium) hazardous waste;

    e.   FSA "heels" (solids accumulated in FSA clarifiers), a D002 (corrosivity) and D004 (arsenic) hazardous waste;

    f.   Gypsum pond decant water, a D002 (corrosivity) and D004 (chromium) hazardous waste, managed in the gypsum stack; and

    g.   Granulation waste, managed in the gypsum stack as of October 2007 and for some years thereafter before that practice was discontinued.

67.     At the time of the October 2007 inspection, the A Evaporator Cleaning Waste disposed of in the gypsum stack was a characteristic hazardous waste, containing above 5.0 mg/l of chromium and had a pH of 0.69. This waste was a prohibited waste in that it was a D002 and D007 hazardous waste, did not meet the treatment standards for hazardous waste at 40 C.F.R. § 268.40(a) and did not meet the Universal Treatment Standards for chromium set forth at 40 C.F.R. § 268.48.

68.     At the time of the October 2007 inspection, the tank farm sump contents in the gypsum stack, which contained a mixture of Bevill-excluded and non-Bevill wastes and are therefore subject to RCRA, were a characteristic hazardous waste and contained at least 15 milligrams per liter of chromium. This waste was a prohibited waste, in that it was a D002 hazardous waste, did not meet the treatment standards for hazardous waste set forth at 40 C.F.R. § 268.40(a), and did not meet the Universal Treatment Standards for chromium set forth at 40 C.F.R. § 268.48.

69.     These prohibited wastes did not meet the treatment standards for land disposal of hazardous waste at 40 C.F.R. § 268.40(a), and Defendants' failure to comply with those

standards therefore violated Section 268(a) of the Wyoming authorized hazardous waste regulations, incorporating 40 C.F.R. §§ 268.9(c), 268.40(a), and 268.48.

70.     Defendants are liable for injunctive relief and civil penalties, pursuant to Section 3008(a) and (g) of RCRA, 42 U.S.C. § 6928(a), (g), for their continuing failure to meet the standards for prohibited waste being land disposed in the gypsum stack.

## FOURTH CLAIM FOR RELIEF
*(EPCRA - Failure to Submit Complete Annual Toxic Release Reports)*

71.     The allegations in paragraphs 1 through 6, paragraphs 23 through 28, and paragraphs 29 through 45, are re-alleged and incorporated herein by reference.

72.     Each of Defendants is a "person" within the meaning of section 329(7) of EPCRA, 42 U.S.C. § 11049(7), which includes corporations.

73.     Each of Defendants is the owner or operator of the Facility, which is a "facility" as that term is defined by section 329(4) of EPCRA, 42 U.S.C. § 11049(4), with 10 or more "full-time employees," as that term is defined by 40 C.F.R. § 372.3.

74.     The Facility is within a Standard Industrial Classification (SIC) for which a corresponding North American Industry Classification System (NAICS) subsector or industry code is included in 40 C.F.R. § 372.23.  Specifically, the Facility is within SIC code 2874 and NAICS code 325312 for chemical manufacturing and for phosphoric acid production facilities, respectively.

75.     The toxic metal compounds in phosphate ore that have been chemically converted to different compounds through the acid digestion process at the Facility have been "manufactured" within the meaning of EPCRA Section 313, 42 U.S.C. § 11023.  In each of years of 2004 through 2006, Defendants manufactured, processed, or otherwise used at the Facility, in excess of the reporting threshold of 25,000 pounds set forth in 40 C.F.R. § 372.25, the following

24

toxic chemicals listed in 40 C.F.R. § 372.65: arsenic compounds, barium compounds, chromium

compounds, copper compounds, hydrogen fluoride, manganese compounds, nickel compounds,

selenium compounds, vanadium compounds, and zinc compounds. Plaintiff believes that, after a

reasonable opportunity for further investigation and discovery, it is likely that the evidence will

show that in each of years 2007 through 2013, Defendants likewise manufactured, processed, or

otherwise used the foregoing toxic chemicals at the Facility in excess of the reporting threshold

of 25,000 pounds, and therefore this fact is also alleged.

76.      Pursuant to section 313(c) of EPCRA and 40 C.F.R. § 372.30, Defendants have

been required to submit, to EPA and to the State in which the facility is located, a Form R toxic

release report for each calendar year in which any of the toxic chemicals listed in 40 C.F.R.

§ 372.65 were "manufactured, processed or otherwise used" at the Facility in excess of

25,000 lbs.

77.      Defendants did not submit a Form R toxic release report to EPA or to the State

of Wyoming for reporting years 2004 through 2006 that included a listing of the quantities of

arsenic compounds, barium compounds, chromium compounds, copper compounds, hydrogen

fluoride, manganese compounds, nickel compounds, selenium compounds, vanadium

compounds, and zinc compounds manufactured, processed, or otherwise used at the Facility in

each of those years, although their quantities each exceeded the reporting threshold. Plaintiff

believes that, after a reasonable opportunity for further investigation and discovery, it is likely

that the evidence will show that Defendants did not file complete toxic release reports, listing all

or some of these same toxic chemicals manufactured, processed, or otherwise used at the Facility

in excess of the reporting threshold, for the reporting years 2007 through 2013, and therefore this

fact is also alleged.

78.     Defendants' failure to submit complete toxic release reports as required for reporting years 2003 through 2013 violated the requirements of EPCRA Section 313 and 40 C.F.R. § 372.30.

79.     Defendants are liable for civil penalties pursuant to sections 325(b)(3) and (c)(4) of EPCRA, 42 U.S.C. §§ 11045(b)(3) and (c)(4), for failure to submit complete annual Form R toxic release reports for reporting years 2004 through 2013.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States, respectfully requests that this Court:

1.     Permanently enjoin Defendants from further violations of RCRA and its implementing regulations that are incorporated into the authorized Wyoming hazardous waste program;

2.     Order Defendants to complete expeditiously all actions necessary to achieve and maintain compliance at the Facility with the statutory and regulatory requirements cited in this Complaint;

3.     Assess civil penalties against the Defendants for up to the maximum amounts for the applicable periods of violation provided in RCRA and EPCRA, as amended by 31 U.S.C. § 3701; and,

4.     Grant the United States such other relief as the Court deems just and proper.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division


DAVID ROSSKAM *(pro hac vice pending)*
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20004-7611
Telephone: (202) 514-3974
david.rosskam@usdoj.gov



MARK A. KLAASSEN
United States Attorney


NICHOLAS VASSALLO                7/9/2020
Assistant United States Attorney
District of Wyoming
P.O. Box 668
Cheyenne, Wyoming 82003
Telephone: (307) 772-2124
nick.vassallo@usdoj.gov

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing

**COMPLAINT** has been served upon the following by the method(s) indicated below on July 9,

2020.

James B. Alderman.                          [ ] By Facsimile
Sr. Vice President, Secretary &             [X] By U.S. Mail - postage
General Counsel                             prepaid
J.R. Simplot Company                        [ ] By Hand Delivery
P.O. Box 27                                 [ ] By Electronic Filing
Boise, ID 83707

United States Attorney's Office

JS 44   (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**DISTRICT OF WYOMING**

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
DAVID ROSSKAM (Pro Hac Vice Pending), U.S. Department of Justice (ENRD/EES) 4 Constitution Sq., 150 M St. NE, Washington, DC 20002 (Mail: P.O. Box 7611, Washington, DC 20044-7611), Tel. (202) 514-3974, Nicholas Vassallo, Assistant United States Attorney

## DEFENDANTS

J.R. SIMPLOT CO. and SIMPLOT PHOSPHATES, LLC

County of Residence of First Listed Defendant  Sweetwater
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
JAMES B. ALDERMAN, THOMAS C. PERRY
J.R. Simplot Company, P.O. Box 27
Boise, ID 83707

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [X] 1   U.S. Government
  Plaintiff
- [ ] 3   Federal Question
  *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government
  Defendant
- [ ] 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)                                     and One Box for Defendant)*

|                          | PTF | DEF |                                                         | PTF | DEF |
|--------------------------|-----|-----|---------------------------------------------------------|-----|-----|
| Citizen of This State    | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | [X] 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1   Original Proceeding
- [ ] 2   Removed from State Court
- [ ] 3   Remanded from Appellate Court
- [ ] 4   Reinstated or Reopened
- [ ] 5   Transferred from Another District *(specify)*
- [ ] 6   Multidistrict Litigation - Transfer
- [ ] 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901 et seq.; EPCRA, 42 U.S.C. §§ 11001 et seq.
Brief description of cause:
Suit for injunctive relief and civil penalties under RCRA; suit for civil penalties under EPCRA

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [X] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  7/9/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 09/19)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# Please wait...

If this message is not eventually replaced by the proper contents of the document, your PDF viewer may not be able to display this type of document.

You can upgrade to the latest version of Adobe Reader for Windows®, Mac, or Linux® by visiting  http://www.adobe.com/go/reader_download.

For more assistance with Adobe Reader visit  http://www.adobe.com/go/acrreader.

Windows is either a registered trademark or a trademark of Microsoft Corporation in the United States and/or other countries. Mac is a trademark of Apple Inc., registered in the United States and other countries. Linux is the registered trademark of Linus Torvalds in the U.S. and other countries.